UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X
                                :

THE STATE OF NEW YORK and THE CITY OF :
NEW YORK,                          :

                   Plaintiffs,    :

                                 :

          -v-                      :

                                 :

BB'S CORNER, INC., NITECAP        :
ENTERTAINMENT CORP., and John Does 1- :
25, owners or employees of entities   :
doing business under the trade names   :
of "BB's Corner" or "Nitecap       :
Entertainment",                  :

                                 :

                Defendants.    :

                                 :

------------------------------------ X

12 Civ. 1828 (KBF)

MEMORANDUM OPINION &
ORDER

KATHERINE B. FORREST, District Judge:

    On March 13, 2012, the State of New York and the City of
New York ("the State" and "the City," respectively and
collectively, "plaintiffs"), commenced this civil action
pursuant to the Contraband Cigarette Trafficking Act, 18 U.S.C.
§ 2341 et seq. ("CCTA"), the Cigarette Marketing Standards Act,
N.Y. Tax L. § 483 et seq. ("CMSA"), New York Tax Law §§ 471 and
471-a, New York Executive Law § 156-c (the "New York Fire and
Safety Act"), and New York Executive Law § 63(12).

    This is one of a series of actions that the State and/or
City have brought against businesses selling loose tobacco and
pre-formed cigarette tubes, and providing on-site access to
machines to "manufacture" or "create" cigarettes.  Once sued,

most of the defendants in such lawsuits settle.  In the instant
matter, however, defendants BB's Corner, Inc. ("BB's Corner,"
also doing business as "Roll-Your-Own of Brooklyn") and Nitecap
Entertainment Corp. ("Nitecap," also doing business as
"Roll-Your-Own of Staten Island" and with BB's Corner,
"defendants") have chosen to stand their ground and fight.  They
deny the allegations in the complaint.  Plaintiffs have now
moved for preliminary injunctive relief to enjoin defendants'
cigarette-related operations.

The State and City seek to enjoin what they assert are the
contraband cigarette operations of defendants--i.e., defendants
are not paying certain excise taxes plaintiffs assert are due
that not only are an important source of public revenue, but
also are a deterrent to smoking--a health hazard that imposes
significant healthcare costs on citizens, the State and City.
(Compl. (Dkt. No. 1) ¶¶ 13-22.)  Plaintiffs also allege that the
cigarettes defendants sell are not "fire safe."  (See id. ¶ 4.)

Defendants oppose plaintiffs' motion on the basis that they
are simply serving a segment of the population who want to--or
are willing to--pay a lower price for loose tobacco and other
inputs.  Defendants' core argument is that they are not selling
"cigarettes" according to the statutory definition under the
CCTA.  They assert that without selling "cigarettes" as
statutorily defined, plaintiffs are not entitled to the

2

statutory presumption of irreparable harm that might otherwise attach.  Defendants further argue that the statute which plaintiffs assert defendants have violated requires that defendants sell at least 10,000 cigarettes--and that plaintiffs' investigation has not revealed the requisite level of sales.

For the reasons set forth below, the Court finds that defendants' arguments are without merit, and plaintiffs' motion for preliminary injunctive relief is GRANTED.

I.   FACTUAL BACKGROUND

Defendants own and operate businesses which advertise for sale cigarettes, or "smokes" at significant discounts.  (See Decl. of Leonard M. Braman ("Braman Decl.") (Dkt. No. 5) Exs. 3, 4 (advertisements for BB's Corner and RYO Staten Island, Nitecap).)  In their advertisements, defendants' establishments offer for sale "full carton 200 count" cigarettes of "up to 70% off retail."  (Id. ¶¶ 22-23.)

Defendants each conduct their business in similar fashion: customers enter the store, purchase both a type of loose tobacco as well as tubes of cigarette paper with affixed filters, and then are provided access, instructions and sometimes direct assistance with the machines that fill the tubes with loose

tobacco.  (Braman Decl. ¶ 9.)  There is no dispute that what are output from the machines are cigarettes.[1]

The New York City Sheriff's Office conducted an investigation of both establishments over a period of months. (Braman Decl. ¶ 11.)  Over the course of three visits to BB's Corner and four visits to Nitecap, investigators purchased seven cartons of cigarettes.  (Id.)  During each visit, a store clerk provided an investigator with loose tobacco as well as cigarette tubes and then instructed on the use of what is known as the "roll your own" ("RYO") machines.  (Id. ¶ 12.)  On occasion, the store clerk would assist with the operation of the RYO machine. (Id. ¶¶ 12-13.)  Store clerks in both establishments assisted customers in "bagging" the cigarettes.  (Id. ¶ 14.)  On several occasions, the investigators were not required to pay for any of the input items (the loose tobacco, the cigarette tubes or use of the machine) until all steps had been completed.  (Id. ¶ 15.) At the end of the in-store process, the investigators purchased a finished carton of cigarettes (which contains 200 cigarettes) for less than $45; the investigators also observed advertisements for "cartons" of cigarettes for a sale price of less than $45.  (Id. ¶ 16.)

---

[1] As discussed further below, defendants' central point is that the customers made the cigarettes--i.e., all that defendants did was sell to the customers were inputs and provide machine access, but that they did not sell cigarettes.

None of the packaging from either established had New York State or City tax stamps affixed.  (Id. ¶ 17.)

II.  DISCUSSION

A.   The Applicable Statutes

1.   The CCTA

The CCTA provides that, "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes . . . ."  18 U.S.C. § 2342(a).

Under the statute, "cigarette" is defined as

(A) any roll of tobacco wrapped in paper or in any substance not containing tobacco; and (B) any roll of tobacco wrapped in any substance containing tobacco which, because of its appearance, the type of tobacco used in the filler, or its packaging and labeling, is likely to be offered to, or purchased by, consumers as a cigarette described in subparagraph (A).

18 U.S.C. § 2341(1).

The statute further defines "contraband cigarettes":

a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person . . .

18 U.S.C. § 2341(2).

Thus, a violation of the CCTA requires the following elements: (1) a person must knowingly ship, transport, received,

possess, sell, distribute or purchase, (2) more than 10,000

"cigarettes", (3) that do not bear stamps, (4) under

circumstances in which state or local tax law requires that such

cigarettes bear stamps.  18 U.S.C. §§ 2341-42; see also City of

New York v. Golden Feather Smoke Shop, Inc., No. 08 Civ. 3996,

2011 WL 6945758, at *3 (E.D.N.Y. Dec. 30, 2011).

2.   The Cigarette Marketing Standards Act

The CMSA provides that it is unlawful for

> [a]ny agent, wholesale dealer or retail dealer, with intent
> to injure competition, or with any intent to avoid the
> collection or paying over of such taxes as may be required
> by law, to advertise, offer to sell, or sell, cigarettes at
> less than the cost of such agent wholesale dealer or retail
> dealer, as the case may be.

N.Y. Tax L. § 484(a)(1); see also Lorillard Tobacco Co. v. Roth,

786 N.E.2d 7, 99 N.Y.2d 316, 319 (N.Y. 2003).  In other words,

defendants may be found in violation of the CMSA if they are

found to be retailers who have advertised, offered to sell, or

to be selling cigarettes without including in the sales price

the cost to the dealer of any required tax stamps.  See N.Y. Tax

L. § 484(a)(1).

The CMSA defines "retail dealer" as "any person engaged in

selling cigarettes at retail."  N.Y. Tax L. § 483(4).  The "cost

of such retail dealer" is defined as "the basic cost of

cigarettes plus the cost of doing business by the retailer",

N.Y. Tax L. § 483(b)(1)(A), the "basic cost of cigarettes" is

6

defined as the "invoice cost of cigarettes to the agent who
purchases from the manufacturer . . . to which shall be added
the full face value of any stamps which may be required by law,"
N.Y. Tax L. § 483(a)(1).

> B.   Standard for the Issuance of a Preliminary Injunction

A preliminary injunction

> is an extraordinary remedy never awarded as of right.
> In each case, courts must balance the competing claims
> of injury and must consider the effect on each party
> of the granting or withholding of the requested
> relief.   In exercising their sound discretion, courts
> of equity should pay particular regard for the public
> consequences in employing the extraordinary remedy of
> injunction

Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010) (quoting

Winter v. Natural Res. Def. Council, 555 U.S. 7, 24 (2008)).

Thus, in order to establish entitlement to a preliminary
injunction, plaintiffs must establish (1) irreparable harm,
(2) either (a) a likelihood of success on the merits, or
(b) sufficiently serious questions going to the merits of its
claims to make them fair ground for a litigation; (3) that the
balance of hardships tips decidedly in their favor; and (4)
whether the public interest favors issuance of an injunction.
City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d
115, 120 (2d Cir. 2010); Metro. Taxicab Bd. Of Trade v. City of
New York, 615 F.3d 152, 156 (2d Cir. 2010).

C.   Analysis

    1.   Irreparable Harm

    With respect to irreparable harm, the Second Circuit has
repeatedly emphasized that "[a] showing of irreparable harm is
'the single most important prerequisite for the issuance of a
preliminary injunction.'" Faiveley Transp. Malmo AB v. Wabtec
Corp., 559 F.3d 110, 118 (2d Cir. 2009). Where, as here, "the
party seeks a statutory injunction, [the Second Circuit] ha[s]
dispensed with the requirement of showing irreparable harm, and
instead employ[s] a presumption of irreparable harm based on a
statutory violation." Golden Feather Smoke Shop, Inc., 597 F.3d
at 120.  In Golden Feather Smoke Shop--a nearly identical case
to the one before this Court on this motion, the Second Circuit
reviewed the district court's granting of a preliminary
injunction to the City of New York and concluded, inter alia,
that "the City was not required to make a showing of irreparable
harm to obtain an injunction under either the CMSA or the CCTA."
Id. at 121.  That holding--i.e., "a party seeking a statutorily-
sanctioned injunction" does not need "to make an additional
showing of irreparable harm"--applies with equal force to the
instant motion.  See id.  However, with that presumption comes
the requirement that plaintiffs show a "likelihood of success on
the merits" (rather than "sufficiently serious questions going

to the merits of its claims to make them fair ground for a litigation"). Id.[2] The Court thus turns to that element next.[3]

### 2. Likelihood of Success

Defendants do not contest that they operate businesses which provide customers with the opportunity to select loose tobacco, cigarette tubes, and access to machinery which fills the tubes with the tobacco. The core of defendants' argument in opposition to this motion is that neither business sells "cigarettes". (See Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj. ("Defs. Opp'n") (Dkt. No. 19) at 2 ("It is defendants' position that they simply do not sell 'cigarettes' which are pre-manufactured, as defined by the applicable statutes.").) Defendants argue that they sell loose tobacco to which an entirely different taxation scheme applies. (Id.) Both arguments ignore the breadth of the statute.

---

[2] Although a prohibitory injunction, like the one here (unlike a mandatory) may be granted on a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief," Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979)) (additional citations omitted), the Second Circuit's ruling in Golden Feather Smoke Shop has altered that standard to require a showing of "likelihood of success."

[3] Even if plaintiffs were not entitled to a presumption of irreparable harm, the U.S. Congress and New York State Legislature have made independent determinations that the relevant statutory schemes are in the interest of public health; a potential impact on public health (i.e., potentially catastrophic health consequences) is itself sufficient irreparable harm to support preliminary injunctive relief.

On the facts before the Court in the form of declarations of plaintiffs' investigators (see Dkt. Nos. 5-8), plaintiffs have shown a strong likelihood of success on the merits of their claims under both the CCTA and the CMSA.

a.   The CCTA

The first question this Court asks with respect to the CCTA is whether defendants have acted knowingly.  The record contains uncontested evidence that both defendants advertised the sale of cartons of cigarettes at steep discounts.  (See, e.g., Braman Decl. Ex. 4; Decl. of Kirill Vilinskiy ("Vilinskiy Decl.") (Dkt. No. 6) Exs. 3, 4.)  "Cartons" are another word for an assembled volume of cigarettes--and so, yes, defendants acted knowingly: they knew exactly what they were selling and advertised those goods for sale.  In addition, there are further facts in the record that make it clear that defendants acted knowingly:  for instance, in terms of the "distribution of cigarettes," the record contains evidence from investigators that employees of defendants assisted them with bagging the cigarettes subsequent to rolling them and handing them to customers.  (See, e.g., Braman Decl. ¶¶ 13-14.)  Thus, there is a likelihood of success on the merits that defendants, at a minimum, knowingly distributed cigarettes.

It surely elevates form over substance to credit defendants' argument that they are not in fact selling or

distributing "cigarettes" when they advertise cartons for sale, and customers walk out of their door with finished (albeit) unstamped cigarettes.  At this stage of these proceedings, plaintiffs have made a sufficient showing of a likelihood of success on the merits that defendants are in fact selling cigarettes.  As stated above, it is uncontested that defendants provide customers with all of the inputs into a cigarette, and instruct customers, sometimes even assisting them, in utilizing the machines that combine the component parts into a finished product.  (See, e.g., Braman Decl. ¶ 12.)  The investigators also stated that in some instances no "sale" occurred, that is, money changing hands, until the very end of the process when the finished cigarettes were bagged and handed to the customer. (See, e.g., id. ¶ 15.)  On those facts, plaintiffs have shown a sufficiently strong likelihood of success on the merits of a "sale" of an item that meets the statutory definition of "cigarettes."

Defendants also argue that for purposes of the CCTA, plaintiffs are not able to make the requisite showing of amount. (Defs. Opp'n at 18.)  Again, at this stage of the proceedings, plaintiffs must make a strong showing of a likelihood of success on proving this issue at trial.  This they have done. Plaintiffs have (i) shown advertisements for sale of cartons of cigarettes (each of which has 200 cigarettes), and it is

reasonable to assume that these advertisements resulted in sales, (ii) defendants business hours suggest that sales could occur for many hours in a day and for many days of the week--the fact that the advertisements state the a carton may be prepared in minutes is further support for a large quantity of sales; and (ii) the investigators purchased a quantity of cigarettes and there is no reason to believe that their purchasing behavior was different from the average customer.  All that is missing are additional sales records that can be requested during discovery.

In Golden Feather Smoke Shop, Inc., the district court rejected an argument that a single sale of 10,000 cigarettes is required to meet the statutory requirement; sales can be aggregated.  See City of New York v. Golden Feather Smoke Shop, Inc., No. 08 Civ. 3966, 2009 U.S. Dist. LEXIS 76306, at *103 (E.D.N.Y. Aug. 25, 2009).  On this record, it would it be surprising indeed if plaintiffs were not able to demonstrate a distribution or sale of the requisite amount.  Defendants have not countered the evidence plaintiffs have proffered with any suggestion that, for instance, defendants only just commenced operations, or have ceased operations after a short period of time, that their machines have not worked for extended periods of time, etc.  For shops that have been operating for months, and are open seven days a week, 16-18 hours per day (Nitecap) or 6-10 hours a day (BB's Corner) (see Vilinskiy Decl. ¶¶ 25, 36),

there is a likelihood that plaintiffs can easily demonstrate the statutorily required amount of "cigarettes" "sold."

The final two elements of a CCTA violation--no stamp and under circumstances when a stamp was required--are easily met. It is uncontested that the cigarettes that customers purchased at defendants' stores did not bear stamps.  Indeed, the basis of defendants' position on this motion is that stamps are not required.  And, as set forth above, all of the facts and circumstances before the Court on this motion suggest that stamps were required and the taxation scheme was being purposefully evaded.

b.   The CMSA

The same facts that support a likelihood of success on the merits with respect to the CCTA similarly support a likelihood of success with respect to the CMSA:

(i)   Defendants do not contest that they are retailers;

(ii)   Defendants have clearly advertised for sale, and as described above, sold, cigarettes:  they need do only one or the other to run afoul of the CMSA, and they have done both;

(iii)   Their advertisements of cigarettes at steep discounts below other retailers (who comply with the relevant taxation scheme) is intended to obtain business at the expense

of other retailers and thus to injure competition.  There is

no suggestion, for instance, that defendants are trying to

grow the overall market of smokers, thereby creating a market

segment to whom other retailers do not otherwise sell.  They

want, instead, to take customers away from those retailers by

offering steeply discounted cigarettes; and

     (iv)  Finally, there is no dispute that defendants are

not complying with the applicable taxation scheme--their

contention is that they need not.

Accordingly, plaintiffs have demonstrated a likelihood of

success that defendants have violated the CCTA and CMSA.

     3.  <u>Balance of the Equities and the Public Interest</u>

The record before the Court on this motion supports a

weighing of the equities in favor of the issuance of injunctive

relief: defendants' argument that injunctive relief will create

economic hardship is insufficient reason not to enjoin what is

likely illegal behavior; if there are legitimate products (such

as loose tobacco alone or loose tubes alone without assembly)

that can be sold, defendants are welcome to do so.  What is

prohibited is the advertisement of very inexpensive cartons of

cigarettes made possible by tax avoidance.

Without a doubt, there is a strong public interest favoring

the protection of public health and insuring both receipt of

14

revenues likely properly due and owing as well as compliance with application tax law.

Accordingly, based on the record before this Court on this motion, plaintiffs have established each of the elements necessary to obtain preliminary injunctive relief.

III. CONCLUSION

For all of the reasons set forth above, plaintiffs' motion for preliminary injunctive relief is GRANTED.

The Clerk of the Court shall terminate the motion at Docket No. 4.


        SO ORDERED:

Dated:     New York, New York
           June  25 , 2012


                            _____
                              KATHERINE B. FORREST
                            United States District Judge